When the plaintiffs had closed the evidence on their part, the defendant moved for a nonsuit, which was not granted; but no exception was taken for that cause. The plaintiffs' counsel then requested the judge before whom the cause was tried, to give certain instructions to the jury, which the judge refused to do, but no exception was taken for that refusal. The judge then charged the jury that the devise in the will of Gerardus Post, if it did not vest in the trustees a fee in trust for the party beneficially interested, confers upon the trustees a power in trust for the benefit of the said parties, which may be exercised by the executor who proved the will; and further, that the plaintiffs Edward W. Leggett and Susan his wife, have not in them a sufficient title to enable them to sustain this suit. "To the said charge and opinions of the said chief justice the counsel for the plaintiffs excepted." The exception was in the words quoted, and probably ought to be confined to the last clause of the charge. The rule recognized in the case of Labon v.Woram, (1 Hill, 91,) ought to be followed in this court as well as in the supreme court; that an exception in general terms to the charge of the court, cannot extend to any matter but that which immediately precedes it. The matter which immediately preceded the exception in this case was, that part of the charge in which the judge stated that "the plaintiffs had not in them a sufficient title to sustain this suit." They could not have a sufficient title to enable them to sustain this suit unless they had the right of possession at the time of the commencement of the suit. (2 R.S. 306, § 25.)
The bill of exceptions does not show on what day the action was commenced; but the plaintiffs in their declaration allege that they were in possession of the premises in question, on the 1st day of July, 1846; and by 2 R.S. 304, § 7, *Page 316 
such possession must be alleged on a day after their title accrued, and that title to be perfect, must include the right of possession. According to the admissions stated in the bill of exceptions, the plaintiffs on the 1st day of May, 1846, received one quarter's rent in advance, and that quarter did not end until the 1st of August, 1846. Having received the rent for that quarter, they did not show a right of possession on the 1st of July in that year. It would be a reproach upon the law to hold that the plaintiffs can be allowed to receive a quarter's rent in advance and then commence and maintain an action of ejectment against the tenant who paid the rent, before the end of the quarter. The defendant was entitled to a nonsuit on this ground, if upon no other.
It may, however, have a tendency to prevent further litigation between these parties, if the court express an opinion upon the other portion of the charge to the jury. No person can read the will without being satisfied that the testator intended that the part of his estate which was to be for the benefit of his daughters, should, during their lives be under the control and management of his executors as trustees. It is true, the testator has not used the most appropriate words to effectuate that intent, yet the words he has used cannot well be misunderstood. The devise to his daughters is: "I give unto my two daughters, Susan and Mary Jagger, the remaining two-fifths of my estate." Had the testator intended that his daughters should have the possession and control of the estate, he would have added nothing to the above devise; but he adds, "so that each may have and enjoy the interest or income of one equal fifth part thereof during their several natural lives." He gives the estate to his daughters so that they may have the interest and income thereof for life, and he then adds, "I hereby appoint my executors, hereinafter named, trustees to the estate of my two daughters, hereby authorizing and desiring my executors as such trustees, to take charge of all such portion of my estate as is herein given to them respectively, and to take care of, manage and improve the same, to the best advantage, and pay over *Page 317 
to them respectively, from time to time, the rents, interest or net income thereof; and in case of the marriage of both or either of them, it shall be sufficient in making such payments from time to time, to take the receipt of my said daughters respectively, without the signature or consent of their respective husbands, and in the same manner and with like effect as if they were sole and unmarried." When a trustee is directed to pay over the rents and profits, he must necessarily receive them. (1 Cruise's Dig. 462, § 13.) The trustees are authorized to take charge of the estate, to take care of, manage and improve the same to the best advantage, to receive the rents and profits, and pay them over, and if necessary to the most advantageous management of the estate, they have power to make leases, in order that rents may be received and paid over; and this is enough to show that the charge of the judge was correct.
In a subsequent part of his will, the testator authorized his executors to sell and dispose of all, or any part of his estate, both real and personal, either at public or private sale, and at such times and such manner and for such sum or sums, as to them in the exercise of their best judgment may seem most expedient,c. The executors under the will had both a general and a special power in trust. They were authorized to convey in fee "to any alienee whatever." (1 R.S. 732, § 77.) They had a special power because they could alienate an interest less than a fee, (2dsub. of § 78,) both powers were in trust, because persons other than the grantees of the power were to have the proceeds of such disposition. (Page 234, § 94, and 2d sub. of § 95.) Whether the trustees took an estate in fee or not, the lease given to the defendant by the executor who proved the will is valid. A power to make leases of one-fifth of the estate, during the life of each of the daughters, is necessarily implied in the express power to take charge of, or take care of, manage and improve the same to the best advantage, and pay over the rents. And were it necessary for the purpose of supporting the lease given to the defendant in this case, it might fairly be insisted, that the power to make leases was included in the power given in the *Page 318 
will to the executors to sell and dispose of all and any part of the testator's estate, both real and personal, c. at such times and in such manner, and for such sum or sums as to them, in the exercise of their best judgment, may seem most expedient, c. A power to make leases is a power to alienate a part of the estate, (16 Wend. 153,) and by the lease in this case a part of the testator's estate was alienated to the defendant. The testator by the word estate may have intended his lands, instead of his interest in the lands.
The question principally discussed upon the argument in this cause was whether the trust in this case to pay over and consequently to receive the rents and profits was a valid express trust, within the third subdivision of the 55th section of 1R.S. 728, which authorizes a trust "to receive the rents and profits of land and apply them to the use of any person during the life of such person, or for any shorter term." This is a question which has occasioned more discussion, and respecting which the distinguished jurists in the state have been more equally divided, than upon any other question to which the revised statutes have given rise; and yet had it been definitively settled when first raised, it would have been of very little importance how it had been determined. I had not, before I came into this court, had occasion to examine the question and form an opinion respecting it; but from reading the report of the leading cases in which the question had been discussed I had received a strong impression that a trust to pay over did not give to the trustee the discretion which the legislature by the words "to apply to the use of" intended he should have. And was the question now raised for the first time, I should be inclined to decide according to that impression, although it has been weakened by the discussions in this court. The argument has been exhausted on both sides, and I shall not make the vain attempt to add any thing to the argument, on the one side or the other. My inquiry will only be, has the question been so decided that it ought no longer to be regarded as an open question?
Upon the argument of this cause the case of Parks v. Parks
was referred to as a case in which the court for the correction of *Page 319 
errors decided in December, 1842, that a trust to receive the rents and profits of land and pay them over was a valid, express trust, under the third subdivision of the 55th section. That case has not been reported in any authentic form; but the printed case and the points made in that court have been furnished to this court; and from the New-York Commercial Advertiser of the 3d of January, 1843, it appears that the opinion of the Chancellor in that case was affirmed by a vote of 10 to 8; that Justice Cowen delivered a written opinion for affirmance, and Senator Bockee for reversal.
That case arose on the will of Peter Parks, who died in April, 1835, leaving a widow, Elizabeth Parks, his daughters Sarah Parks and Hannah Lyon, wife of Peter P. Lyon, and his sons, David, Samuel and Peter Parks — having in February preceding made a will, and thereby devised all his real and personal estate to his daughter Sarah Parks, her heirs, executors, administrators and assigns forever, to, for and upon the following uses, trusts, interests and purposes:
First, after paying his debts, funeral expenses, c. to permit his wife to enjoy the rents and income of his real and personal estate for and during her natural life, or so long as she should continue his widow; out of such rents and income were to be paid taxes, assessments, c. and upon the condition that she and his daughter Sarah Parks should live together on the premises then occupied by him, and that his daughter Sarah should receive her support out of the same during the life of his wife, or so long as she should continue his widow. In trust in the second place: That immediately after the decease or the marriage of his wife, he directed his daughter Sarah Parks to pay over unto his son Peter during his natural life the rent and income arising from his house and lot of ground number twenty-six Oliver-street — out of such rent and income she was first to pay taxes, assessments,c. A similar trust was made in favor of his son Samuel, of a house and lot number thirty Oliver-street. He devised a house and lot to his daughter Hannah Lyon in fee, and a house and lot to his son David for life, and after his death to his heirs, subject to the payment of a mortgage thereon. The will contains various other *Page 320 
devises. David was dissatisfied with the will, and filed a bill before the vice chancellor of the first circuit, for the purpose of setting it aside. In his bill he alleged "that the devises and bequests of the entire estate of the said Peter Parks, deceased, real as well as personal, under the said last will and testament,and also all the trusts intended to be created by the said will,are in all things, in each and every particular, illegal,inoperative and absolutely void," and he prayed that the same might be decreed void and ineffectual in law. And the vice chancellor held that the will as to the real estate was null and void, and decreed accordingly.
From that decree Sarah Parks, executrix, and Elizabeth Parks, Samuel Parks and Peter Parks appealed to the chancellor, and he reversed the decree made by the vice chancellor, and held that the trusts were valid. (9 Paige, 107.) From the decree of the chancellor, David Parks, Peter P. Lyon and Hannah Lyon his wife, appealed to the court for the correction of errors, and the sixth point made in that court by the appellants was: "The trusts however, are not valid within the third subdivision of the 55th section of the revised statute on trusts, it not being to apply
the rents and profits to the use of the beneficiaries, and the beneficiaries themselves not being such persons as are contemplated within the statute; and, in addition, the trustee is also a cestui que trust." And the third point on the part of the respondents was, "the trusts to receive the rents, and profits of number twenty-six, thirty and twenty-eight, Oliver-street, and thirteen Forsyth-street, and pay them over to the children mentioned in the several devises of these premises, are valid trusts."
The result in the court for the correction of errors has already been stated. Although the opinion of that court was concurred in only by a majority of two members, it ought to be regarded as the law of the land until the legislature shall alter it. I am therefore of opinion that the judgment of the superior court be affirmed with costs.
RUGGLES, SHANKLAND and HOYT, Js. were also for affirming the judgment. They concurred in the opinion that by the *Page 321 
will a trust estate was given to the executors during the lives of the two daughters, and that the trust was valid.